UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
ALEXEI ORLOV,                           )
                                        )
        Plaintiff                       )        Civ. No.  1:07-cv-350 (JDB)
                                        )
v.                                      )
                                        )
PHYLLIS HOWARD, District Director,      )
U.S. Citizenship and Immigration Services, et al.,  )
                                        )
        Defendants                      )
_____)

## OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

The Plaintiff, Alexei Orlov, by counsel, respectfully opposes the Defendant's

Motion to Dismiss ("MD") in the above-captioned case, for the reasons set forth below.

**I.    INTRODUCTION**

This Court should deny the Defendants' motion to dismiss.  The Defendants argue

that dismissal of the Plaintiff's mandamus complaint is warranted for lack of subject

matter jurisdiction and for failure to state a claim upon which relief may be granted.  MD

at 6.  According to the Defendants, this Court is stripped of subject matter jurisdiction

over the Plaintiff's complaint by section 242(a)(2)(B)(ii) of the Immigration and

Nationality Act ("INA"), 8 U.S.C. §1252(a)(2)(B)(ii), which divests courts of jurisdiction

to review "an agency's discretionary decision or action."  MD at 9.  The Defendants

contend further that the Court lacks subject matter jurisdiction because the Plaintiff lacks

"a clear right to an immediate adjudication" of his adjustment application, and the

Defendant Citizenship and Immigration Services ("CIS") "owes no clear duty to

adjudicate" the applicant prior to completion of all required background checks. MD at 9-10. Finally, the Defendants assert that the Court cannot review the Plaintiff's mandamus complaint under the Administrative Procedure Act ("APA"), because the APA "does not provide for an independent basis to review agency action" – unless coupled with another jurisdictional basis, such as 28 U.S.C. §1331 – and the APA "precludes judicial review of agency's discretionary decisions." MD at 10. The Plaintiff will address each of these arguments in turn.

## II.    FACTUAL ERRORS IN DEFENDANT'S MOTION

At the outset, the Plaintiff draws the Court's attention to a number of factual errors and significant omissions in the Defendants' motion to dismiss. In support of its motion, the Government submitted a sworn declaration from Susan Dibbins, Field Office Director of the Washington District Office, U.S. Citizenship and Immigration Services (CIS). Ms. Dibbins' declaration contains several errors of fact concerning the Plaintiff's adjustment of status application, of which this Court should be aware.

First, Ms. Dibbins attests that an interview was scheduled on the Plaintiff's I-485 application for July 28, 2005. Dibbins Decl. ¶6. However, that interview was mistakenly scheduled by CIS. The Plaintiff had, in fact, been interviewed by CIS approximately a year and a half earlier, on February 24, 2004, in Arlington, Virginia. *See* Complaint ¶11 and Exh. 3. At the conclusion of that interview, the Plaintiff was told that his case had been approved and a temporary lawful permanent resident stamp was placed in his passport. *Id.* However, when the interviewing officer realized that the Plaintiff's name check was still pending, he manually crossed out the stamp and told the Plaintiff he would have to wait until background checks had been completed. *Id.* More than 17

months later, after receiving notice from CIS that another hearing had been scheduled for July 28, 2005, the Plaintiff walked into the Washington District Office of CIS in Fairfax, Virginia on July 21, 2005, and inquired why the second interview had been scheduled. The Plaintiff was advised by the CIS officer with whom he spoke that the July 28, 2005 appointment was a "mistake" and that there was "no need" for him to show up on that date.

Second, Ms. Dibbins attests that "[a] request for additional documents was also mailed to the applicant on July 21, 2005, with a deadline for submission of August 20, 2005." Dibbins Decl. ¶6. This is not accurate. Rather, the Plaintiff appeared in person at CIS offices on July 21, 2005, in order to inquire about the mistakenly scheduled second interview in his case. When he was eventually allowed to speak with an immigration officer, the Plaintiff pleaded with her to explain what was happening with his adjustment application. The officer then looked in the file and stated that CIS did not have the Plaintiff's most recent tax returns. The Plaintiff explained that when he submitted his application in January 2003, he could only submit the returns he had available at that time, and, moreover, he had never been asked to provide copies of his 2004 returns. Notwithstanding, the Plaintiff immediately submitted copies of his 2004 tax returns to CIS, in hopes that this would resolve the matter and avoid further undue delay in his case. His hopes were in vain.

Third, Ms. Dibbins attests that FBI fingerprint checks were originally submitted to the FBI on May 3, 2003 in the Plaintiff's case; results of those checks were received by CIS on May 8, 2003. These fingerprint checks expired on August 8, 2004, and a second set was submitted to the FBI on December 14, 2004. The second set expired on March

14, 2006 and a third set was processed by the FBI on March 1, 2006 and expired on June 1, 2007. Dibbins Decl. ¶9. According to Ms. Dibbins, "[i]n the event this case is not completed by June 1, 2007, a new fingerprint notice will be mailed to the applicant to once again update his fingerprints to be current to within 15 months." *Id.* The Plaintiff has received no such notice. In fact, the Plaintiff notes that other than the first set of forms he received after initial filing of his adjustment application, he has *never* received a fingerprint appointment notice from CIS. Moreover, he was never informed by CIS that fingerprints "expire" every 15 months. To the contrary, he learned this fact by accident in December 2004, during one of his numerous trips to the CIS district office to inquire about the status of his case. At that time, the immigration officer informed the Plaintiff that his expired fingerprints "must be the reason" for the lengthy delay in adjudication. Clearly, this was not accurate, as the Defendants have now conceded that the reason for the delay in the Plaintiff's case is that "USCIS is still waiting for the results of the *original name check from May 5, 2003* to be submitted by the FBI to USCIS for review." Dibbins Decl. ¶11 (emphasis added).

In March 2006, aware that his fingerprints were once again set to expire and having received no fingerprint appointment notice from CIS, the Plaintiff again visited the CIS district office to attempt to resolve the situation. The officer with whom he spoke assured him that because his fingerprints were set to expire, he "must have" received an appointment notice from CIS. The Plaintiff eventually convinced the officer that this had not occurred, and she agreed to issue a hand-written appointment notice, which the Plaintiff immediately carried to the CIS fingerprinting office to obtain updated fingerprints. Presently, despite the Plaintiff's fingerprints having "expired" on June 1,

2007, he has received no appointment notice from CIS to again have his fingerprints taken. As before, in order to clear this necessary hurdle, the Plaintiff will presumably have to visit the CIS district office in person and again persuade the officer to issue him a hand-written fingerprint appointment notice. CIS's mishandling of this single aspect of the Plaintiff's adjustment application – his required FBI fingerprint checks – is indicative of the carelessness and unwarranted delay that have characterized the agency's conduct in this case. Clearly, CIS's handling of this adjustment of status claim to date belies Ms. Dibbins's assurances that the agency will endeavor to "complete its adjudication as expeditiously as possible under the circumstances." Dibbins Decl. ¶12.

## III.    STANDARD OF REVIEW

### A.    Fed. R. Civ. P. 12(b)(1)

To overcome a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), the "plaintiff bears the burden of establishing the factual predicates of jurisdiction by a preponderance of the evidence." *Kaur v. Chertoff*, Slip Opinion, 2007 WL 1560319, at *4 (D.D.C. May 31, 2007) (*citing Erby v. United States*, 424 F. Supp. 2d 180, 182 (D.D.C. 2006)). The doctrine of Rule 12(b)(1) decisions — that the plaintiff's claims must be "patently insubstantial," presenting no federal question suitable for decision — demands that the claims "be flimsier than 'doubtful or questionable'…they must be 'essentially fictitious.'" *Best v. Kelley*, 39 F.3d 328, 330 (D.C. Cir. 1994) (*citing Hagans v. Lavine*, 415 U.S. 528, 536-538 (1973)). A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction will be denied unless "the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining federal jurisdiction or where such a claim is wholly insubstantial and

frivolous." *Bell v. Hood,* 327 U.S. 678, 682 (1946); *see also Piorkowski v. Parziale*, Slip

Opinion, 2003 WL 21037353, at *2 (D. Conn. May 7, 2003).

Furthermore, a motion to dismiss made pursuant to Rule 12(b)(1) can be either a

facial or factual challenge.  Here, the government's motion to dismiss pursuant to Rule

12(b)(1) is a facial challenge because it does not dispute the facts upon which the subject

matter jurisdiction depends; rather, it questions the sufficiency of the complaint.  *Yu v.*

*Brown,* 36 F. Supp. 2d 922, 927 (D.N.M. 1999) (holding that the court did have federal

question jurisdiction).  If the Rule 12(b)(1) motion is a facial challenge, the pleadings are

taken as true for the purposes of the motion. *See Jetform Corp. v. Unisys Corp.,* 11 F.

Supp. 2d 788, 789 (D. Va. 1998) (holding that if the challenge is that the complaint fails

to state sufficient facts to support subject matter jurisdiction, the analysis is similar to a

Rule 12(b)(6) motion, whereby the facts in the complaint are assumed to be true); *see*

*also Kaur*, 2007 WL 1560319, at *4; *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d

1249, 1254 (D.C. Cir. 2005).

**B.  Fed. R. Civ. P. 12(b)(6)**

A court should not grant a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)

"unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of

his claim which would entitle him to relief." *Abigail Alliance For Better Access to*

*Developmental Drugs v. Von Eschenback*, 445 F.3d 470, 475 (D.C. Cir. 2006) (*quoting*

*Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also Swierkiewicz v. Sorema*, 534 U.S.

506, 514 (2002) (holding that a complaint may be dismissed under Rule 12(b)(6) "only if

it is clear than no relief could be granted under any set of facts which could be proved

consistent with the allegations"); *Kaur*, 2007 WL 1560319, at *5; *Song v. Klapakas*, Slip

Opinion, 2007 WL 1101283, at *2 (E.D. Pa. Apr. 12, 2007); *Baker v. Director, United States Parole Comm'n*, 916 F.2d 725, 726 (D.C. Cir. 1990). The Court must treat the complaint's factual allegations as true and must grant "the plaintiff the benefit of all reasonable inferences from the facts alleged." *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006); *see also Kaur*, 2007 WL 1560319, at *5. The task of the Court in deciding on a Rule 12(b)(6) motion is "merely to assess the legal feasibility of the complaint." *Kim v. Ashcroft*, 340 F. Supp. 2d 384, 388 (S.D.N.Y. 2004); *see also Saunders v. Coughlin*, No. 92-Civ.-4289, 1994 WL 88108, at *2 (S.D.N.Y. Mar. 15, 1994).

To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff need only show that a reasonable inference can be drawn from his allegations. Here, the "[e]xact amount of time that is reasonable is a fact-specific inquiry, [a determination that] is premature at [the motion to dismiss] stage." *Wu v. Chertoff*, Slip Copy, 2007 WL 1223858, at *3 (N.D. Cal. 2007) (denying government's motion to dismiss a mandamus complaint alleging unreasonable agency delay in adjudicating Plaintiff's adjustment of status application); *see also Yu*, 36 F. Supp. 2d at 934 ("What constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case.")

## IV.    JURISDICTION OVER PLAINTIFF'S MANDAMUS COMPLAINT IS NOT STRIPPED BY 8 U.S.C. §1252(a)(2)(B)(ii) OR 8 U.S.C. §1252(g)

### A.    8 U.S.C. §1252(a)(2)(B)(ii)

The Defendants first contend that this Court lacks jurisdiction over the Plaintiff's complaint pursuant to 8 U.S.C. §1252(a)(2)(B)(ii), which strips the federal courts of jurisdiction to review a discretionary agency "decision or action." MD at 10-14. The Defendants' arguments are unpersuasive and are contrary to the overwhelming "weight

of authority" on this issue, which clearly holds that CIS has "a non-discretionary duty to process or adjudicate an adjustment application" and that "that duty supports a mandamus action." *Duan v. Zamberry*, Slip Copy, 2007 WL 626116 (W.D. Pa. Feb. 23, 2007); *see also Ma &Liu v. Gonzales*, Slip Copy, 2007 WL 1655188 (W.D. Wash. June 5, 2007); *Pool v. Gonzales*, Slip Copy, 2007 WL 1613272 (D.N.J. June 1, 2007); *Ibrahim v. Chertoff*, Slip Copy, 2007 WL 1558521 (S.D. Cal. May 25, 2007); *Chen v. Heinauer*, Slip Copy, 2007 WL 1468789 (W.D. Wash. May 18, 2007); *Koren v. Chertoff*, Slip Copy, 2007 WL 1431948 (D. Conn. May 14, 2007); *Dmitriev v. Chertoff*, Slip Copy, 2007 WL 1319533 (N.D. Cal. May 4, 2007); *Huang v. Gonzales*, Slip Copy, 2007 WL 1302555 (W.D. Wash. May 2, 2007); *Wu*, 2007 WL 1223858; *Song*, 2007 WL 1101283; *Mahd v. Chertoff*, Slip Copy, 2007 WL 891867 (D. Colo. Mar. 22, 2007); *Singh v. Still*, 470 F. Supp. 2d 1064 (N.D. Cal. 2006); *Aboushaban v. Mueller*, Slip Copy, 2006 WL 3041086 (N.D. Cal. Oct. 24, 2006); *Zahani v. Neufeld*, Slip Copy, 2006 WL 2246211 (M.D. Fla. June 26, 2006); *Elkhatib v. Butler*, Slip Copy, 2005 WL 5226742 (S.D. Fla. June 7, 2005).

The Plaintiff does not dispute that the Secretary of the U.S. Department of Homeland Security ("DHS") – and the Defendant CIS acting on his behalf – has discretion to grant or deny adjustment of status applications under section 245(a) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1255(a). *See* MD at 11. However, CIS does *not* enjoy unfettered discretion to unreasonably and, as the Defendants implicitly argue, indefinitely delay adjudication of a properly filed application. The agency's discretion applies only to the decision whether to *grant* or *deny* an individual claim, not to whether the application should be adjudicated in the first place.

Contrary to the Defendants' arguments, the process of adjudicating the Plaintiff's adjustment of status application is not a "'decision or action' . . . the 'authority for which is specified . . . to be discretionary,'" although either approval or denial of that application *would* be such a discretionary decision or action.  MD at 10 (citing 8 U.S.C. §1252(a)(2)(B)(ii)).  Stated otherwise, CIS is not required to grant the Plaintiff's request, and the agency's ultimate decision is not subject to review by the federal courts absent constitutional infirmity.  8 U.S.C. §1252(a)(2)(B)(ii).  Such discretion over the *result*, however, cannot be stretched to permit indefinite delay in the *adjudication* of a properly filed application.  The Plaintiff is entitled to some decision in this case, because the failure to render any decision has become unreasonable as a matter of law.

Section 242(a)(2)(B) of the INA, 8 U.S.C. §1252(a)(2)(B), as amended by the REAL ID Act of 2005, Pub. L. No. 109-13 (May 11, 2005), eliminated the authority of the federal courts to review decisions by the government to grant or deny discretionary relief, including adjustment of status.  Specifically, subsection (ii) of §242(a)(2)(B) provides that "no court shall have jurisdiction to review . . . (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security . . . ."  8 U.S.C. §1252(a)(2)(B)(ii).[1] Notwithstanding this jurisdiction-stripping provision, however, this Court may exercise jurisdiction in the instant case because the Plaintiff challenges only the government's failure to *adjudicate* his application for adjustment of status in the first instance.  Section 1252(a)(2)(B)(ii) does not strip federal courts of jurisdiction where – as in this case – the

---

[1] "[T]his subchapter" refers to Subchapter II of Chapter 12 of Title 8 of the U.S. Code, which includes INA § 245, 8 U.S.C. § 1255.

government has a nondiscretionary duty to act. As was set forth in the original complaint, CIS owes the Plaintiff a duty to process and adjudicate his application for adjustment of status, and it has unreasonably failed to perform that nondiscretionary duty. *See* Complaint ¶¶9, 22, 31; *see also* 8 U.S.C. § 1103; 8 C.F.R. §§ 245.2(a)(5)(i), 245.6.

In their motion to dismiss, the Defendants attempt to blur this critical distinction – between a discretionary act of decision-making and a non-discretionary failure to adjudicate – and urge this Court to find that the jurisdiction-stripping language of 8 U.S.C. §1252(a)(2)(B)(ii) is all-encompassing, and that the agency's latitude to decide applications is unfettered. According to the Defendants, INA §245 vests the agency with discretion over the "*entire* process" of adjudicating an adjustment of status application, including "the pace at which that action proceeds." MD at 11-12 (quoting *Safadi v. Howard*, 466 F. Supp. 2d 696, 700 (E.D. Va. 2006). However, the overwhelming majority of courts that have addressed the issue presented here – whether failure or delay in processing an application for adjustment of status constitutes an "action" by CIS under 8 U.S.C. §1252(a)(2)(B)(ii), thereby stripping the courts of jurisdiction to consider mandamus claim such as that brought by the Plaintiff – have rejected the government's arguments. These courts have concluded, to the contrary, that subject matter jurisdiction *does* exist and that mandamus relief may, under certain circumstances, be appropriate. *See, e.g.*, *Ma &Liu*, 2007 WL 1655188, at *3; *Pool*, 2007 WL 1613272, at *2; *Ibrahim*, 2007 WL 1558521, at *3; *Chen*, 2007 WL 1468789, at *3; *Koren*, 2007 WL 1431948, at *5; *Dmitriev*, 2007 WL 1319533, at *2; *Huang*, 2007 WL 1302555, at *3; *Wu*, 2007 WL 1223858, at *2-3; *Song*, 2007 WL 1101283, at *4; *Duan*, 2007 WL 626116, at *3; *Mahd*,

2007 WL 891867, at *3; *Singh*, 470 F. Supp. 2d at 1067; *Aboushaban*, 2006 WL 3041086, at *2; *Zahani*, 2006 WL 2246211, at *1; *Elkhatib*, 2005 WL 5226742, at *2.

      "These courts have reasoned" – as the Plaintiff argues in this case – "that even though the actual decision to grant or deny an application for adjustment of status is discretionary, the USCIS has a *non-discretionary duty* to act on applications *within a reasonable time*." *Pool*, 2007 WL 1613272, at *2 (emphasis added) ("[T]he obligation of the USCIS to process applications is not discretionary and is reviewable by this Court."). Consequently, the courts have time and again denied government motions to dismiss arguing a lack of jurisdiction under 8 U.S.C. §1252(a)(2)(B)(ii). *E.g.*, *Ma &Liu*, 2007 WL 1655188, at *3; *Pool*, 2007 WL 1613272, at *2; *Ibrahim*, 2007 WL 1558521, at *3; *Chen*, 2007 WL 1468789, at *3; *Koren*, 2007 WL 1431948, at *5; *Dmitriev*, 2007 WL 1319533, at *2; *Huang*, 2007 WL 1302555, at *3; *Wu*, 2007 WL 1223858, at *2-3; *Song*, 2007 WL 1101283, at *4; *Duan*, 2007 WL 626116, at *3; *Mahd*, 2007 WL 891867, at *3; *Singh*, 470 F. Supp. 2d at 1067; *Aboushaban*, 2006 WL 3041086, at *2; *Zahani*, 2006 WL 2246211, at *1; *Elkhatib*, 2005 WL 5226742, at *2. As this parade of decisions makes clear, the "weight of authority" does not support the Defendants' position.

      Three recent U.S. District Court opinions are particularly instructive on this issue, explaining why, despite the jurisdiction-stripping language of INA §1252(a)(2)(B)(ii), the courts retain jurisdiction to review a noncitizen's claim of unreasonable delay in adjudicating an adjustment of status application. *See Ma &Liu*, 2007 WL 1655188; *Song*, 2007 WL 1101283; *Duan*, 2007 WL 626116.

**Duan v. Zamberry**

In *Duan*, the U.S. District Court for the Western District of Pennsylvania denied the government's motion to dismiss a mandamus action brought by an adjustment of status applicant, who claimed that adjudication of his I-485 had been unreasonably held up by CIS – specifically, for a period of more than two years. *Duan*, 2007 WL 626116, at *1. The court rejected the government's contention that INA §1252(a)(2)(B)(ii) stripped it of jurisdiction to consider the applicant's claim, because the subchapter within which the provision falls "specifies only that it is within the discretion of the Attorney General to adjust one's status; it does *not* address, much less specify any discretion associated with, the *pace* of application processing." *Id.* at *2 (emphasis added). Consequently, the court found §1252(a)(2)(B)(ii) "inapplicable" to the petitioner's claim of adjudicatory delay. *Id.*; *see also Alaka v. Att'y General*, 456 F.3d 88, 95 (3d Cir. 2006) ("The jurisdiction stripping language [of Section 1252] applies not to all decisions the Attorney General is entitled to make, but to a narrower category of decisions where Congress has taken the additional step to specify that the sole authority for the action is in the Attorney General's discretion."); *Khan v. United States*, 448 F.3d 226, 232 (3d Cir. 2006) (stating that, as a general matter, there is a "strong presumption in favor of judicial review of administrative action"). Drawing a clear distinction between discretionary agency actions that are explicitly immune to review and actions which fall outside the statute's jurisdiction-stripping influence, the court explained:

> Although the speed of processing may be "discretionary" in the sense that it is determined by choice, and that it rests on various decisions that Defendants may be entitled to make, *it is not discretionary in the manner required by the jurisdiction-stripping language of the IIRIRA*.

*Id.* (emphasis added); *see also, e.g.*, *Valenzuela v. Kehl*, Slip Copy, 2006 WL 2474088, at **19-20 (N.D. Tex. Aug. 23, 2006).

In reaching its determination, the *Duan* court expressly rejected the reasoning of *Safadi v. Howard*, 466 F. Supp. 2d 696 (E.D.Va. 2006), which is relied upon by the Defendants in support of their motion to dismiss. *See* MD at 12,16,18, 21.  According to the *Duan* court's Chief Judge, "to read the jurisdiction-stripping statute as did the *Safadi* court would render toothless all timing restraints, including those imposed by the APA[.]"  *Duan*, 2007 WL 626116, at *3.  Judge Ambrose declared further,

> Such a result would amount to a grant of permission for inaction, and a purposeful disregard of the potential for abuse thereof, on immigration matters.  I will not, therefore, follow the line of reasoning represented by *Safadi*.  Instead, I find that Section 1252(a)(2)(B)(ii) *does not divest this Court of jurisdiction* over the Plaintiff's claims.

*Id.* (emphasis added).  A number of other district courts, from various judicial circuits, have concurred with *Duan*'s reasoning.  *See, e.g.*, *Koren*, 2007 WL 1431948, at *4 ("[T]his Court is not persuaded by the *Safadi* court's reasoning. … Accordingly, this Court finds that §1252(a)(2)(B)(ii) does not divest this Court of subject matter jurisdiction over Plaintiffs' claim that the adjudication of their applications for adjustment of status has been unreasonably delayed."); *Chen*, 2007 WL 1468789, at *3 ("[T]he Court is not persuaded by defendants' reliance on *Safadi v. Howard*" but finds, contrary to *Safadi*, "that section 1252(a)(2)(B)(ii) does not divest the Court of jurisdiction over plaintiff's claim."); *Huang*, 2007 WL 1302555, at *3 ("[T]he Court is not persuaded by defendants' reliance on *Safadi v. Howard*.").

*Duan* also examined, and found unpersuasive, the Texas court's decision in *Mustafa v. Pasquarell*, 2006 WL 488399 (W.D. Tex. Jan. 10, 2006), upon which the

Defendants in this case also rely.  *See* MD at 11, 13.  Judge Ambrose's thoughtful

analysis bears repetition in its entirety:

> *Mustafa* considered mandamus standards, rather than the jurisdiction-
> stripping statute at issue.  *Mustafa* was based, in part, on the conclusion
> that because the governing statute and regulations do not impose a specific
> time limit, the timing of an adjudication must be considered a matter of
> discretion.  *Alaka*[,456 F.3d at 95,] and its progeny have rendered this
> reasoning unpersuasive; the absence of language cannot mean the
> presence of discretion.  The *Mustafa* court also relied on 8 C.F.R.
> 103.2(b)(18), which permits the withholding of adjudication.  The present
> Defendants do not assert that they have acted pursuant to that Section.  In
> any event, however, action under that Section would *still be subject to the
> reasonableness requirement imposed by the APA.*

*Duan*, 2007 WL 626116, at *2 n.2 (emphasis added) (citing *Gemini Realty, Inc. v.*

*Gonzalez*, Slip Copy, 2006 WL 2927562 (M.D. Fla. Oct. 12, 2006)).  The Chief Judge

observed further,

> I note, too, that both *Safadi* and *Mustafa* involved plaintiffs, either
> explicitly or by the court's framing of the issue, who sought relief in the
> nature of immediate adjudication of an adjustment application.  In
> *Mustafa*, the court specifically found no statutory entitlement to an
> immediate adjudication.  In contrast, the present Plaintiff seeks an Order
> compelling Defendants to *immediately take all actions necessary* to
> adjudicate her application, rather than to immediately adjudicate the
> application.

*Id.* at *2 n.2 (emphasis added) (internal citations omitted).

Likewise in the case at bar.  Contrary to the Defendants' contentions, the Plaintiff

has never insisted upon "immediate adjudication" of his adjustment application.  MD at

16, 21.  Rather, he has requested only that "the Defendants and those acting under them []

take all appropriate action to adjudicate the Plaintiff's Application to Adjust Status to

Lawful Permanent Resident (Form I-485) without further delay" and that "the Defendants

and those acting under them [] perform their duty to adjudicate the Plaintiff's adjustment

of status application[.]"  Complaint ¶¶1, 32(1).  This Court has jurisdiction to review the Plaintiff's complaint.

### Song v. Klapakas

Along the same lines, in *Song* the U.S. District Court for the Eastern District of Pennsylvania found that although the actual decision to grant or deny an application for adjustment of status is discretionary, CIS has a *non-discretionary* duty to act on applications within a reasonable time.  *Song*, 2007 WL 1101283, at *3.  The court thus rejected the government's contention that jurisdiction over delayed adjustment claims was eliminated by INA §242(a)(2)(B)(ii), holding that the statute "does not bar judicial review because USCIS has not made a decision or acted on plaintiffs' applications."  *Id.* at *4.  *Song* distinguished between a grant or denial of adjustment, over which "this court likely would not have jurisdiction," and the agency's simple "fail[ure] to do anything at all."  *Id.* at *4; *see also Paunescu*, 76 F. Supp. 2d at 900 ("Plaintiffs do not ask this court to 'review' a governmental action, but to examine and rectify a gross inaction.")

### Ma & Liu

Most recently, the U.S. District Court for the Western District of Washington denied a government motion to dismiss, under substantially identical circumstances to the case at bar, and affirmatively stated that "the Court does not find adjudication of applications for adjustment of status to be completely outside its jurisdiction."  *Ma &Liu*, 2007 WL 1655188, at *3.  As in *Duan* and *Song*, the court observed that, in contrast with the agency's discretionary authority to grant or deny an adjustment application, "nothing in the INA addresses, much less specifies, any discretion associated with the *pace* of adjudication."  *Id.* (emphasis added); *see also Duan*, 2007 WL 626116, at *2 (holding

15

that the "speed of processing" is "not discretionary in the manner required by the jurisdiction-stripping language of [INA §1252(a)(2)(B)(ii)]"). Furthermore, as in *Duan*, the court was "not persuaded" by the Government's reliance on *Safadi v. Howard*. *Ma &Liu*, 2007 WL 1655188, at *3.

> The *Safadi* court framed the issue as whether the term "action," as used in 8 U.S.C. §1252(a)(2)(B)(ii), encompassed the pace at which USCIS processes adjustment applications, and then held that it did. However, the court then expressly stated that its decision did *not* address the existence of jurisdiction in the case of *refusal* to process an application, or in the case where a delay was so unreasonable as to constitute a refusal. As the United States District Court for the Western District of Pennsylvania has pointed out, such a disclaimer "raises the question of how an unreasonably delay might not qualify as an 'action' ... while a reasonable delay unambiguously does constitute 'action'" which "would render toothless all timing restraints[.]"

*Id.* (emphasis added) (internal citations omitted); *see also Duan*, 2007 WL 626116, at *3 ("[T]o read the jurisdiction-stripping statute as did the *Safadi* court . . . would amount to a grant of permission for inaction . . . ."). The court thus held that 8 U.S.C. §1252(a)(2)(B)(ii) clearly does not strip jurisdiction to review a noncitizen's complaint that his adjustment of status application has been unreasonably delayed. *Ma &Liu*, 2007 WL 1655188, at *3.

The opinions discussed above are but three recent examples of the numerous federal court decisions holding that applicants for adjustment of status are entitled to adjudication within a reasonable period of time, and that the government's actions to that end are not wholly discretionary. As these decisions demonstrate, with the dramatic increase in background check delays in recent years, the federal courts have witnessed a corresponding increase in mandamus litigation by non-citizens hoping to obtain a decision on their delayed applications for immigration benefits, in particular adjustment

of status claims.  The government has routinely urged dismissal of such actions, insisting that the plaintiffs are seeking review of a discretionary "decision or action" over which the federal courts have been stripped of jurisdiction.  The courts, however, have consistently rejected the government's arguments, refusing to find that Congress intended such a sweeping elimination of judicial review.  *See, e.g.*, *Razaq v. Poulos*, Slip Copy, 2007 WL 61884 (N.D. Cal. Jan. 8, 2007); *Haidairi*, 2006 WL 3544922, at *4 ("Plaintiffs are only asking this Court to compel Defendants to make *any* decision."); *Valenzuela*, 2006 WL 2474088; *Aboushaban*, 2006 WL 3041086, at *2; *Elkhatib*, 2005 WL 5226742, at *1-2; *Yu*, 36 F. Supp. 2d at 931-32; *Paunescu*, 76 F. Supp. 2d at 901.

As in *Duan*, *Song*, and *Ma & Liu*, these courts agree that CIS's non-discretionary duty to adjudicate an adjustment of status application supports a mandamus action.  *Id.* Although there is, at present, no precedent in this circuit on the specific issue presented, "the majority of federal courts who have considered similar claims have found mandamus relief appropriate."  *Song*, 2007 WL 1101283, at *3. [2]  Furthermore, "the weight of

_____

[2] The Plaintiff notes that this Court's recent decision in *Kaur v. Chertoff* is factually and procedurally distinguishable from the present suit.  In *Kaur*, the Court granted the Government's motion to dismiss a mandamus suit because the petitioner failed even to respond to the Government's principal arguments in support of dismissal. *Kaur*, 2007 WL 1560319, at *4.  Moreover, the Court determined that the petitioner was not eligible for the underlying relief he had sought – adjustment of status to lawful permanent resident – because he had overstayed his period of voluntary departure and was "therefore inarguably barred from receiving an adjustment of status . . . for a period of ten years."  *Id.* at *6.

The Court's decision was *not* based on the jurisdiction-stripping arguments advanced by the Government – namely, that by enacting INA §1252(g), Congress "precluded district courts from exercising jurisdiction over claims similar to those brought . . . on behalf of aliens, including petitions for writs of mandamus," because such claims relate to a "decision or action . . . to commence proceedings, adjudicate cases, or execute removal orders against any alien[.]"  *Id.* at *1, 5.  To the contrary, the Court held that "[t]he petitioners have pointed to *no statutory or regulatory provision*, nor even relevant caselaw, that would indicate that USCIS possessed a 'clearly defined'

authority holds that defendants have a non-discretionary duty to process adjustment applications and that this duty provides a jurisdictional basis for mandamus actions." *Id.* at *3 n.6; *see also Duan*, 2007 WL 626116, at *3 (and cases cited therein).  The Plaintiff entreats this Court to likewise "find[] the weight of this authority persuasive" and deny the Defendants' motion to dismiss under 8 U.S.C. §1252(a)(2)(B)(ii).  *Ma & Liu*, 2007 WL 1655188, at *4.

Were this Court to hold otherwise, it would surrender its vital judicial oversight role and deprive countless deserving adjustment of status applicants – like the Plaintiff – of their sole avenue of recourse.  The cautionary words of the U.S. District Court for the Southern District of New York are particularly apt:

> Although there is no statutory or regulatory deadline by which the CIS *must* adjudicate an application, at some point, defendants' failure to take any action runs afoul of [the APA].  Were it otherwise, the CIS could hold

obligation" to perform the task had been requested.  *Id.* at *10 (emphasis added).  Hence, "even if there was not statutory [jurisdictional] bar to the relief that [the petitioners are] seeking, the Court concludes that the petitioners have not otherwise demonstrated that they are entitled to the 'extraordinary remedy' of mandamus."  *Id.*

In granting dismissal of the mandamus suit in *Kaur*, the Court found that any purported prejudice that the petitioner may have suffered as a result of agency delay in adjudicating his I-130 petition "was thoroughly vitiated by [his] failure to comply with his voluntary departure order and the Ninth Circuit's subsequent denial of his petition to reopen his removal proceedings."  *Id.* at *11.  According to the Court,

> [T]he petitioners' opposition to the motion entirely fails to address the respondents' arguments regarding the Courts' alleged lack of jurisdiction under § 1252(g), the purportedly preclusive effect of Malhi's failure to abide by his voluntary departure order, and the assertedly discretionary nature of the action which the petitioners seek to compel.

*Id.* *4.  The Court also found the petitioner ineligible for mandamus relief where he offered no compelling reason, much less a "clear and indisputable" duty, why CIS should have considered his earlier, more favorable I-130 petition rather than his more recent, superseding petition.  *See id.* at *9-10.  The Court did not reach – because it did not have to – the question whether the petitioner's mandamus action was jurisdictionally barred under INA §1252.

> adjustment applications in abeyance for decades without providing any
> reasoned basis for doing so.  Such an outcome defies logic – the CIS
> simply does no possess unfettered discretion to relegate aliens to a state of
> "limbo," leaving them to languish there indefinitely.

*Kim*, 340 F. Supp. 2d at 393.  The U.S. Court of Appeals for the Third Circuit has

also cautioned against blurring the distinction between discretionary and non-

discretionary agency determinations, in order to avoid an overly broad curtailment

of the courts' jurisdiction.  In *Pinho v. Gonzales*, 432 F.3d 193, 203 (3d Cir.

2005), the court explained:

> We must also ask whether the action at issue here was discretionary.  It is
> important to distinguish carefully between a denial of an application to
> adjust status, and a determination that an immigrant is legally ineligible
> for adjustment of status.  *This distinction is central to the question of
> subject matter jurisdiction, and is easy to elide*.

*Pinho*, 432 F.3d at 203 (emphasis added).  Warning against such broad assertions of

jurisdiction-stripping effect as have been propounded by the Defendants, the Third

Circuit declared that

> such distinctions are crucial to administrative law generally; the framework of
> judicial review of agency action that has evolved over the past half-century is
> grounded in a sharp distinction between decisions committed to agency
> discretion, and decisions, whether "ministerial" or "purely legal," governed
> directly by the applicable statute or regulation.

*Id.*; *see also Sepulveda*, 407 F.3d at 63 ("[Section] 1252(a)(2)(B) does not bar judicial

review of nondiscretionary, or purely legal, decisions . . . .").  In the case at bar, there has

been, to date, no "actual exercise of discretion" by the Secretary of Homeland Security on

the Plaintiff's application for adjustment, but only an unreasonable failure to adjudicate

that application.  Consequently, this Court's jurisdiction endures.

Finally, the Defendants insist upon a broad reading of the jurisdiction-stripping

language in §1252(a)(2)(B)(ii), arguing that the agencies require "wide discretion" to

delay their adjudication while conducting all necessary background checks, in order "to prevent granting benefits to aliens who are ineligible due to criminal history, immigration fraud, or threat to national security." MD at 13. However, well-established principles of statutory construction support a narrower interpretation of the statute, as counseled by the Plaintiff. *See, e.g.*, *Obioha v. Gonzales*, 431 F.3d 400, 405 (4th Cir. 2005). First, there must be a showing of "'clear and convincing evidence' of a contrary legislative intent" to restrict access to judicial review. *Bd. of Governors of the Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 44 (1991) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 141 (1967)). Second, there is a "strong presumption in favor of judicial review of administrative action," or, as in this case, administrative *in*action. *INS v. St. Cyr*, 533 U.S. 289, 298 (2001). Third, courts construe ambiguities in deportation statutes in favor of the alien. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 449 (1987); *see also Obioha*, 431 F.3d at 405 (applying these principles to 8 U.S.C. § 1252(a)(2)(B)(i)); *Iddir v. INS*, 301 F.3d 492, 496-97 (7th Cir. 2002) (same). Because the language of 8 U.S.C. §1252(a)(2)(B)(ii) is "equally susceptible to a more narrow interpretation," barring review only of a decision to either grant or deny an adjustment application, but not of a decision to withhold adjudication altogether, "these principles guide that the narrower reading is appropriate." *Obioha*, 431 F.3d at 405.

In sum, as the Plaintiff's complaint does not seek review of a particular action or decision by the Secretary of the DHS, but seeks simply to compel the completion of necessary processing and the adjudication of an unreasonably delayed application for adjustment of status, the Court is not divested of its right to review by the jurisdiction-stripping provisions of 8 U.S.C. § 1252(a)(2)(B)(ii).

**B.    8 U.S.C. §1252(g)**

The Defendants also argue that this Court is deprived of jurisdiction over the

Plaintiff's mandamus complaint by 8 U.S.C. §1252(g).  MD at 10.  This statutory

provision states, in relevant part, that

> . . . no court shall have jurisdiction to hear any cause or claim by or on
> behalf of any alien arising from the decision or action by the Attorney
> General to commence proceedings, adjudicate cases, or execute removal
> orders against any alien under this Act.

8 U.S.C. §1252(g) (emphasis added).  The Defendants' arguments on this basis are

equally unavailing, and their "logic is curious, to say the least."  *Razik v. Perryman*, 2003

WL 21878726, *1 (N.D. Ill. Aug. 7, 2003).  As a number of other courts have pointed

out, "section 1252(g) applies only to INS actions related to deportation or removal."  *Fu*

*v. Reno*, 2000 WL 1644490, at *3 (N.D. Tex. Nov. 1, 2000); *see also Hu v. Reno*, 2000

WL 425174, at *2 (N.D. Tex. Apr. 18, 2000); *Paunescu*, 76 F. Supp. 2d at 898; *cf.*

*Rahman v. McElroy*, 884 F. Supp. 782 (S.D.N.Y. 1995) (complaint sought review of INS

decision, rather than to compel INS to decide).  Because the Plaintiff's adjustment of

status application is unrelated to any deportation or removal proceedings, 8 U.S.C.

§1252(g) is *irrelevant* to this Court's jurisdiction over his mandamus complaint.  *See*

*Razik*, 2003 WL 21878726, *2 (holding that 8 U.S.C. § 1252(g) does not deprive court of

jurisdiction, because no adjudication had yet occurred and agency had a mandatory duty

to adjudicate applications for adjustment of status); *Paunescu*, 76 F. Supp. 2d at 898

(same); *Yu*, 36 F. Supp. 2d at 934 (same).

**V.    MANDAMUS JURISDICTION UNDER 28 U.S.C. §1361**

The Defendants next argue that the Plaintiff's complaint should be dismissed

because he "lacks a clear right to immediate adjudication, and Defendant has no clear

mandatory or ministerial obligation to adjudicate the application within a particular time frame." MD at 16. Once again, the Defendants' arguments are unpersuasive. Because the Plaintiff seeks only to compel the Defendants to complete necessary processing and adjudicate an application which has been unreasonably delayed, this Court has original jurisdiction under the mandamus statute, 28 U.S.C. §1361. Contrary to the Defendants' claims, the Plaintiff has established that he has a clear right to the relief requested, and that the agencies have a clear duty to act.

Adjudication of the Plaintiff's adjustment application, including completion of all necessary background checks, is a purely ministerial, non-discretionary act which the Defendants are under obligation to perform in a timely manner. *See* 8 U.S.C. § 1103; 8 C.F.R. §§ 1245.2(a)(5)(i), 1245.6. As one court has recently explained,

> The Defendants … have a nondiscretionary duty to process Liu's application; they cannot decide not to process an application. Such a decision would not be an exercise of discretion, but a refusal to perform assigned duties. This Court has jurisdiction to review whether the Defendants are refusing to act.

*Liu v. Chertoff*, Slip Copy, 2007 WL 1202961, at *3 (C.D. Ill. Apr. 23, 2007) (denying government's motion to dismiss plaintiff's mandamus suit and finding two year delay in completing plaintiff's FBI name check to be "highly unusual"); *see also, e.g.*, *Ma & Liu*, 2007 WL 1655188, at *4; *Pool*, 2007 WL 1613272, at *2 ("[T]he obligation of the USCIS to process applications is not discretionary and is reviewable by this Court."); *Ibrahim*, 2007 WL 1558521, at *5 ([T]he duty to adjudicate the applications is discretionary and ministerial."); *Chen*, 2007 WL 1468789, at *4 ([T]his non-discretionary duty to adjudicate an adjustment application supports a mandamus action."); *Koren*, 2007 WL 1431948, at *7 ("Since CIS' obligation to *adjudicate* adjustment of status

applications is clearly prescribed, the failure to do so within a 'reasonable' period of time triggers mandamus jurisdiction in federal court."); *Dmitriev*, 2007 WL 1319533, at *3; *Huang*, 2007 WL 1302555, at *4; *Wu*, 2007 WL 1223858, at *2-3; *Song*, 2007 WL 1101283, at *3; *Duan*, 2007 WL 626116, at *3; *Mahd*, 2007 WL 891867, at *3; *Singh*, 470 F. Supp. 2d at 1067 ("[Petitioners whose applications for adjustment in status are properly before the INS … have a right, enforceable through a writ of mandamus, to have the applications processed within a reasonable time.") (internal citations omitted); *Aboushaban*, 2006 WL 3041086, at *2; *Zahani*, 2006 WL 2246211, at *1; *Elkhatib*, 2005 WL 5226742, at *2 ("[A]dministrative agencies do not possess discretion to avoid discharging the duties that Congress intended them to perform.").  As the Plaintiff has asserted, the delay of four years to adjudicate his properly filed application is per se unreasonable.  *See* Complaint ¶28.  The Plaintiff has fully complied with all the requirements for seeking adjustment of status, including making countless inquiries with CIS into the unexplained delays in reaching a decision on his application.  *See* Complaint ¶¶10-20.

The district court's opinion in *Wu v. Chertoff* provides valuable guidance on this point.  In *Wu*, the U.S. District Court for the Northern District of California considered a case presenting nearly identical facts to the case at bar.  *Wu*, 2007 WL 1223858.  Like Mr. Orlov, the plaintiff in *Wu* sought mandamus relief to expedite the processing of her FBI name check and I-485 adjustment of status application.  *Id.* at *1.  The government moved to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), contending that the court lacked jurisdiction because the Defendant agency had "no clear, ministerial duty to act

within a particular time frame." *Id.* at *2.  The court rejected this argument, finding that

jurisdiction exists under both the mandamus statute and the APA.

> The Court agrees with the many district courts that have held that, taken together, the APA, the INA, and section 245.2(a)(5) of the CFR establish a *clear and certain right* to have immigration status adjustment applications adjudicated, and to have them adjudicated within a reasonable time.

*Id.* at *3 (emphasis added); *see also Singh*, 470 F. Supp. 2d at 1068; *Gelfer*, 2007 WL

902382; *Aboushaban*, 2006 WL 3041086; *Song*, 2007 WL 1101283.  Furthermore, the

court discerned "nothing to compel the conclusion that three years is a 'reasonable time'

as a matter of law" for the plaintiff's name check and adjustment application to have been

delayed, and thus denied the government's motion to dismiss.  *Wu*, 2007 WL 1223858, at

*3-4 ("Relief under mandamus and the APA are virtually equivalent when a petitioner

seeks to compel an agency to act on a nondiscretionary duty.").

Similarly, in *Song*, the district court rebuffed the government's efforts to dismiss

the plaintiff's suit, holding that the agency has "a non-discretionary duty to process

adjustment applications and that this duty provides a jurisdictional basis for mandamus

actions."  *Song*, 2007 WL 1101283, at *3 n.4; *see also Duan*, 2007 WL 626116, at *3

(and cases cited therein).  *Song* noted that even though the actual decision to grant or

deny an application is discretionary, the agency "has a *non-discretionary* duty to act on

applications within a reasonable time."  *Song*, 2007 WL 1101283, at *3 (emphasis

added).  In addition, in *Ma & Liu*, having rejected the government's jurisdictional

arguments under 8 U.S.C. §1252(a)(2)(B)(ii), the court proceeded to find that the

mandamus statute provides affirmative jurisdiction in suits such as that brought by the

Plaintiff.  "[T]his Court finds that plaintiffs have a right to the adjudication of their

adjustment applications and defendants' actions in that respect are not wholly

discretionary." *Id.* at *4. In addition, "[t]his non-discretionary duty to process or adjudicate an adjustment application supports a mandamus action." *Id.*; *see also, e.g.*, *Song*, 2007 WL 1101283, at *4; *Duan*, 2007 WL 626116, at *3 ("The weight of authority . . . supports a finding that Defendants have a non-discretionary duty to process or adjudicate an adjustment application; that duty supports a mandamus action."); *Haidairi*, 2006 WL 3544922, at *6 ("A writ of mandamus confers upon the Court the power to compel the Defendants to perform the duty they owe Plaintiffs.").

This Court should follow the well-reasoned opinions of the numerous district courts that have asserted jurisdiction over similar mandamus suits and should accordingly deny the Defendants' motion to dismiss.

## VI.    JURISDICTION UNDER THE APA

The Defendants argue further that the Plaintiff's allegations of unreasonable delay in the adjudication of his adjustment of status application are unreviewable under the Administrative Procedure Act ("APA"), 5 U.S.C. §§555(b), 702, because (1) such adjudications are "expressly committed to agency discretion"; (2) without any statutory timeframe for completing adjudications, "this Court would have to create a temporal standard out of whole cloth"; and (3) the Plaintiff's complaint is "devoid of factual allegations that demonstrate unreasonable delay." MD at 18, 20, 21. On each count, the Defendants' arguments are both unavailing and contrary to the overwhelming weight of authority.

At the outset, the Defendants' assertion that "the APA precludes this Court from reviewing Plaintiff's claim," MD at 17, is belied by this Court's explicit assertions of APA jurisdiction over nearly identical mandamus claims. For example, in the context of

a similar mandamus action brought by a noncitizen petitioner under 28 U.S.C. §1361, the Court held that it "clearly has jurisdiction to review a claim of unreasonable delay of agency action" under the APA. *Liberty Fund, Inc. v. Chao*, 394 F. Supp. 2d 105, 114 (D.D.C. 2005). Echoing the Plaintiff's complaint in this case, *Liberty Fund* explained that "[t]he Administrative Procedure Act requires an agency to act 'within a reasonable time,' 5 U.S.C. § 555(b), and authorizes a reviewing court to 'compel agency action … unreasonably delayed,' 5 U.S.C. § 706(1)." *Id.* at 114; *see also* Complaint ¶28. According to the Court, where a plaintiff "ha[s], in fact, demonstrated unreasonable delay," he has thereby established "a 'clear right' to relief under the Mandamus Act." *Liberty Fund*, 394 F. Supp. 2d at 114.

## A.     The APA Requires Defendants to Act "Within a Reasonable Time"

Contrary to the Defendant's claims, the government is obligated under the APA to carry out its duties – including the adjudication of properly filed adjustment of status applications – within a reasonable time. Under the APA, "[w]ith due regard for the convenience and necessity of the parties or their representatives and *within a reasonable time*, each agency *shall* proceed to conclude a matter presented to it." 5 U.S.C. § 555(b) (emphasis added). Resort to the APA is appropriate where, as here, no specific time frame for completion of agency action is mandated by the relevant statute. *See, e.g.*, *Ma & Liu*, 2007 WL 1655188, at *4 ("[T]his Court agrees that jurisdiction is proper under the APA and 28 U.S.C. §1331 to compel USCIS to adjudicate an application for adjustment to permanent status."); *Pool*, 2007 WL 1613272, at *2 (same); *Koren*, 2007 WL 1431948, at *6 (same); *Dmitriev*, 2007 WL 1319533, at *3 (finding that "the USCIS has a statutory duty to adjudicate I-485 applications within a reasonable time" under the

26

APA); *Huang*, 2007 WL 1302555, at *3 (same); *Wu*, 2007 WL 1223858, at *2-3 ("This Court has jurisdiction to hear plaintiff's complaint under both the writ of mandamus and the APA."); *Song*, 2007 WL 1101283, at *4 (finding that jurisdiction exists under the APA "because while the agency has discretion to determine the outcome of an adjustment application, they do not have discretion concerning the timing of processing applications"); *Duan*, 2007 WL 626116, at *4 ("I am persuaded by those courts that have found the exercise of jurisdiction proper, and 'this court now joins the majority and holds that jurisdiction is proper under the APA and 28 U.S.C. §1331 to compel the INS to adjudicate an application for adjustment to permanent status.'") (internal citations omitted); *Singh*, 470 F. Supp. 2d at 1072 ("[T]he Court concludes that, whether pursuant to mandamus or the APA, Mr. Singh is entitled to the relief he seeks."); *Fu v. Reno*, Slip Copy, 2000 WL 1644490, at *6 (N.D. Tex. Nov. 1, 2000) ("[T]he court has subject matter jurisdiction over this case pursuant to the APA in conjunction with 28 U.S.C. §1331."); *Yu*, 36 F. Supp. 2d at 932; *Agbemaple v. INS*, Slip Copy, 1998 WL 292441, at *2 (N.D. Ill. May 18, 1998); *see also Gelfer*, 2007 WL 90382, at *3 ("Relief under mandamus and the APA are virtually equivalent when a petitioner seeks to compel an agency to act on a nondiscretionary duty."); *cf., e.g.*, *Danilov*, 370 F. Supp. 2d at 445 (finding the APA inapplicable because "this matter is controlled by the specific grant of subject matter jurisdiction set forth in 8 U.S.C. § 1447(b)," which sets forth a specific 120-day deadline for completion of agency action).

Furthermore, timely adjudication of discretionary decisions is a fundamental requirement of the APA and is distinct from non-reviewability of actions "committed to agency discretion by law," pursuant to 5 U.S.C. § 701(a)(2). The former principle

permits the courts to intervene to determine *when* a case should be decided, whereas the

latter principle bars review of *how* a case is to be decided.  A court generally will not

order the government to exercise its discretion in any particular manner.  *See, e.g.*,

*Silveyra v. Moschorak*, 989 F.2d 1012, 1015 (9th Cir. 1993) (stating that, in general,

"mandamus may not be used to instruct an official *how* to exercise discretion") (emphasis

added).  However, the courts *are* empowered to order the government to take *some*

action.  *See, e.g.*, *Ma & Liu*, 2007 WL 1655188, at *4; *Pool*, 2007 WL 1613272, at *2;

*Koren*, 2007 WL 1431948, at *6; *Dmitriev*, 2007 WL 1319533, at *3; *Huang*, 2007 WL

1302555, at *3; *Wu*, 2007 WL 1223858, at *2-3; *Song*, 2007 WL 1101283, at *4; *Duan*,

2007 WL 626116, at *4; *Singh*, 470 F. Supp. 2d at 1072; *Fu*, 2000 WL 1644490, at *6;

*Yu*, 36 F. Supp. 2d at 932; *Agbemaple*, 1998 WL 292441, at *2 (N.D. Ill. May 18, 1998);

*Gelfer*, 2007 WL 90382, at *3.

    In similar cases where an adjustment of status applicant has brought a mandamus

suit to compel agency action on a stalled application, the federal courts have exercised

jurisdiction under the APA and found lesser delays by the government to be

unreasonable.  *See, e.g.*, *Kim*, 340 F. Supp. 2d 384 (noting that section 555(b) of the APA

requires the government to act within a reasonable amount of time); *see also Ma & Liu*,

2007 WL 1655188, at *5 (stating that, even in the absence of any statutory or regulatory

timeline, "federal courts routinely assess the 'reasonableness' of the pace of agency

action under the APA"); *Song*, 2007 WL 1101283, at *4-5 (same); *Duan*, 2007 WL

626116, at *4 (same).

    In *Kim v. Ashcroft*, for example, the district court considered an alien's claim that

a 42-month delay by the INS in adjudicating his adjustment of status application was

unreasonable and in violation of the APA. *Kim*, 340 F. Supp. 2d at 386. The government filed a motion to dismiss the suit for lack of subject matter jurisdiction and failure to state a claim upon which relief could be granted, which the court denied "in its entirety," finding that "subject matter jurisdiction exists pursuant to the APA in conjunction with the federal question statute." *Id.* at 386, 388. According to the district court,

> Defendants' arguments fail for several reasons. *First*, defendants correctly note that the decision of whether to grant or deny an adjustment application is wholly discretionary. However, Kim is not requesting judicial review of an adverse adjudication rendered by defendants; nor is he seeking to compel them to grant his petition. Rather, he is asking this Court to compel defendants to make *any* decision. Whether to *adjudicate* an adjustment application is not discretionary, but governed by section 6 of the APA, requiring the CIS to take action on a matter presented to it "within a reasonable time."

*Id.* at 389. The court stated further,

> [A]lthough there is no statutory or regulatory deadline by which the CIS *must* adjudicate an application, at some point, defendants' failure to take any action runs afoul of section 555(b). Were it otherwise, CIS could hold adjustment applications in abeyance for decades without providing any reasoned basis for doing so. Such an outcome defies logic – the CIS simply does not possess unfettered discretion to relegate aliens to a state of "limbo," leaving them to languish there indefinitely. *This result is explicitly foreclosed by the APA.*

*Id.* at 393 (emphasis added).

Likewise, the court in *Song* determined that jurisdiction exists under the APA because although the agency has discretion to determine the *outcome* of a particular adjustment application, it does not have discretion over the *timing* of application processing: "USCIS simply does not possess unfettered discretion to relegate an alien to a state of limbo, leaving them there to languish indefinitely." *Song*, 2007 WL 1101283, at *4 (quoting *Haidari*, 2006 WL 3544922, at *6). Such unreasonable delay is "explicitly foreclosed" by the APA. *Id.*

29

*Ma & Liu* also found that jurisdiction exists under 28 U.S.C. §1331 and the APA, rejecting the government's argument that neither the statute nor the regulations provide a "meaningful standard" against which to measure the agency's adjudicatory process. *Ma & Liu*, 2007 WL 1655188, at *4. "As federal courts routinely assess the 'reasonableness' of the pace of agency action under the APA, this Court believes there is a meaningful standard against which to judge defendants' action, or lack thereof." *Id.* at *5 (citing *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1190 (10th Cir. 1998)). Accordingly, the court ruled that jurisdiction exists "to *compel* USCIS to adjudicate an application for adjustment to permanent resident status." *Id.* (emphasis added).

Finally, in a suit finding APA jurisdiction to review an agency determination regarding an alien's statutory eligibility for adjustment, the Third Circuit has declared that "[a] litigant has a right to a prompt resolution of decisions concerning his status affording him the opportunity to make personal, educational, or career plans." *Pinho*, 432 F.3d at 201-02 (citing *Chen v. Reno*, 1997 WL 316482, at *2 (S.D.N.Y. 1997)).

In the case at bar, the Plaintiff has complied fully with all requirements imposed on him and performed what should have been more than necessary to obtain his immigrant status. In response, the Defendants have engaged in unreasonable inaction and delay, failing to adjudicate his adjustment of status application despite the Plaintiff's repeated inquiries and entreaties over the past several years. Under these circumstances, the Court should find – like the majority of federal courts to have addressed this issue – that the Defendants' failure to adjudicate the Plaintiff's application is unreasonable and a breach of its ministerial non-discretionary duty. *See, e.g.*, *Ma & Liu*, 2007 WL 1655188, at *4; *Pool*, 2007 WL 1613272, at *2; *Koren*, 2007 WL 1431948, at *6; *Dmitriev*, 2007

WL 1319533, at *3; *Huang*, 2007 WL 1302555, at *3; *Wu*, 2007 WL 1223858, at *2-3; *Song*, 2007 WL 1101283, at *4; *Duan*, 2007 WL 626116, at *4; *Singh*, 470 F. Supp. 2d at 1072; *Fu*, 2000 WL 1644490, at *6; *Yu*, 36 F. Supp. 2d at 932; *Agbemaple*, 1998 WL 292441, at *2 (N.D. Ill. May 18, 1998); *Gelfer*, 2007 WL 90382, at *3.

## B.    The Court May Determine What is "Reasonable" Under the APA in the Absence of a Statutory Timeframe for Adjudication

The Defendants also contend that the APA affords this Court no jurisdiction to review the Plaintiff's mandamus complaint, because "there is no standard against which the Court can measure whether the Agency has acted 'within a reasonable time,' 5 U.S.C. § 555(b), or 'unreasonably delayed' adjudication, id. § 706(1)." MD at 19. The Defendants are mistaken. Although neither the statute nor the regulations provide a specific timeframe for adjudication of adjustment of status claims, this does not render the pace of application processing discretionary; there is an implied commitment under the statute to adjudicate meritorious claims within a reasonable period of time. *See, e.g.*, *Ibrahim*, 2007 WL 1558521, at *5 (observing that "the duty to adjudicate the applications is nondiscretionary and ministerial" and "the statute implies that this duty must be carried out within a reasonable time"); *see also Elmalky v. Upchurch*, Slip Copy, 2007 WL 944330, at *5 (N.D. Tex. Mar. 28, 2007) ("[T]he USCIS has a *nondiscretionary* duty to issue *some* decision . . . within a reasonable time.") (emphasis in original); *Lazli v. USCIS*, Slip Copy, 2007 WL 496351, at *4 (D. Or. Feb. 12, 2007) (finding an implied duty to adjudicate within a reasonable time); *Dmitriev*, 2007 WL 1319533, at *3 ("[T]he USCIS has a statutory duty to adjudicate I-485 applications within a reasonable time.").

Moreover, the CIS itself publishes application processing times, which plainly afford a "meaningful standard" against which this Court can assess the reasonableness of

agency delay.  *See, e.g.*, *Ibrahim*, 2007 WL 1558521, at *7 (noting that "[w]hile

Congress has not imposed a timetable for application processing, the CIS has established

one" in the form of its published case processing times).  As one district court has

observed,

> [A]lthough there is no statutory or regulatory deadline by which the CIS
> *must* adjudicate an application, at some point, defendants' failure to take
> *any* action runs afoul of section 555(b).  Were it otherwise, CIS could hold
> adjustment applications in abeyance for decades without providing any
> reasoned basis for doing so.  Such an outcome defies logic – the CIS
> simply does not possess *unfettered* discretion to relegate aliens to a state of
> "limbo," leaving them to languish there indefinitely.  *This result is
> explicitly foreclosed by the APA.*

*Kim*, 340 F. Supp. 2d at 393 (emphasis added).

In this case, the CIS Washington Field Office reports that it is currently

processing I-485 applications that were filed on August 8, 2006.  *See*

https://egov.uscis.gov/cris/jsps/officeProcesstimes.jsp?selectedOffice=80.  Notably, the

Plaintiff's I-485 was filed with CIS on February 27, 2003, approximately *3 ½ years*

*earlier* than the date of applications currently being adjudicated.  CIS's processing of the

Plaintiff's application has thus been delayed for 3 ½ years according to the agency's own

standards.  CIS's published processing times clearly provide a "meaningful standard"

against which this Court may assess the reasonableness of agency delay.  *See, e.g., Wu*,

2007 WL 1223858, at *3 (holding that "[t]he amount of time that is reasonable [for

agency processing of an I-485 application] is a fact-specific inquiry" and finding

"nothing to compel the conclusion that three years is a 'reasonable time' as a matter of

law"); *Gelfer*, 2007 WL 902382, *2  ("Allowing the respondents a limitless amount of

time to adjudicate petitioner's [I-485] application would be contrary to the 'reasonable

time' frame mandated under [the APA]."); *Yu*, 36 F. Supp. 2d at 934 ("What constitutes

an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case.").

### C.     The Facts Support a Finding of Unreasonable Agency Delay

The Defendants maintain that even if this Court has jurisdiction to consider the Plaintiff's mandamus action, "the Complaint is devoid of factual allegations that demonstrate unreasonable delay in acting upon Plaintiff's application."  MD at 21.  The Defendants' assertion is striking, to say the least; it is also erroneous.

In his mandamus complaint, the Plaintiff stated that he filed his application for adjustment of status with CIS on January 23, 2003.  Complaint ¶2.  In its motion to dismiss, the Defendants acknowledge that "FBI name checks were initiated on the applicant on or around May 5, 2003."  Dibbins Decl. ¶8.  Therefore, it is undisputed that the Plaintiff's FBI name check has now been pending for more than four years.  The Defendants have presented no evidence to suggest that the Plaintiff may have contributed to this delay, by failing to provide necessary information or timely appear for appointments and interviews, or that there exist higher priorities necessitating the lugubrious process in his case.

The federal courts have found equivalent, and even lesser, agency delays to be "unreasonable" and have thus denied government efforts to dismiss the applicants' mandamus suits.  *See, e.g.*, *Liu*, 2007 WL 1202961, at *2 (finding a two year delay in completing adjustment applicant's FBI name check to be "highly unusual"); *Singh*, 470 F. Supp. 2d at 1067 (denying government's motion to dismiss where marriage-based adjustment application pending for nearly four years); *Elkhatib*, 2005 WL 5226742, at *2 (holding that "four years is an unreasonable length of time for Petitioner's Application to

remain pending" and granting mandamus complaint); *Razik*, 2003 WL 2187826, at *2-3 (denying motion to dismiss and noting that plaintiffs' applications had "languished for two years and yet INS has done nothing"); *Paunescu*, 76 F. Supp. 2d at 902-03 (finding government "misfeasance" and concluding that plaintiffs were "victims of a bureaucratic nightmare" where applications remained pending for two years); *Yu*, 36 F. Supp. 2d at 935 (denying motion to dismiss where application pending for 2 ½ years).

In light of this compelling authority, the Court should find that the agency's delay in this case is unreasonable and should remand the Plaintiff's case to CIS with instructions to take all necessary steps to complete adjudication of his I-485 – including expediting the FBI name check, if necessary – as expeditiously as possible. *See Ibrahim*, 2007 WL 1558521, at *7 (noting that "delays in the immigration arena affect human health and welfare, and are therefore less tolerable than those that implicate only economic interests"); *Singh*, 470 F. Supp. 2d at 1067 (denying government's motion to dismiss and ordering agency to complete adjudication of plaintiff's pending I-485, which "has been pending for almost four years," where "Mr. Singh's inability to obtain permanent resident status affects a wide range of important rights," including ability to travel and to petition for family members).

Alternatively, an assessment of whether CIS's delay is "unreasonable," given the particular circumstances of the Plaintiff's case, is a question of fact that must be decided by the Court in merits proceedings on the underlying mandamus complaint, rather than on a motion to dismiss. It would be premature, at this stage of the proceedings and where certain facts of the case remain in dispute, to grant the Defendants' request to dismiss the Plaintiff's complaint. *See, e.g.*, *Gelfer*, 2007 WL 902382, at *2 ("On this motion to

dismiss, it is premature to determine whether the delay was actually unreasonable under the circumstances.  If the delay is found to be unreasonable after a full consideration of the surrounding facts, the Court will then have a duty to 'compel' respondents to adjudicate the application by a deadline certain."); *Koren*, 2007 WL 1431948, at *7 ("Because there is insufficient information on which to base a determination at this time, the court cannot say that Plaintiffs will be unable to prove any set of facts which would entitle them to relief."); *Liu*, 2007 WL 1202961, at *3 (finding question regarding how long an FBI name check should take, and whether timing in plaintiff's case indicates a failure to act by CIS, to be an issue of fact that is not subject to dismissal or summary judgment); *Agbemaple*, 1998 WL 292441, at *2 ("Because it is possible that Agbemaple could demonstrate that the delay has in fact been unreasonable, dismissal is inappropriate.").

Furthermore, the specific facts of the Plaintiff's case indicate that he is not simply "waiting in line" to have his I-485 application duly adjudicated, but apparently has been "lost in a bureaucratic shuffle," whereby his countless inquiries to CIS have fallen on deaf administrative ears and the now four year delay in adjudication has only continued to grow.  *Pool*, 2007 WL 1613273, at *3.  Under such circumstances, the courts have held that the agency "must either adjudicate [the I-485 application] or provide a satisfactory explanation for the delay."  *Id.*  As detailed in Section II above, the Defendants' explanation for the delay is not only inadequate, it also contains factual errors that are detrimental to the Plaintiff's claim.  Where such disputed issues of fact exist, dismissal is not appropriate.  *See, e.g.*, *Gelfer*, 2007 WL 902382, at *2; *Liu*, 2007 WL 1202961, at *3; *Agbemaple*, 1998 WL 292441, at *2.

Finally, the Defendants contend that

It would be unconscionable and potentially risk the safety and security of the nation for USCIS to grant United States lawful permanent resident status to anyone without first ensuring that the government's law enforcement databases do not contain verified derogatory information about the alien. With lawful permanent resident status, a person who is a risk to the public or the nation's security could obtain work in sensitive industries and travel on transportation carriers more easily.

Dibbins Decl. ¶5. The agency's concerns, although perhaps legitimate with respect to individuals who could reasonably be considered a "risk to the public or the nation's security," clearly do not apply to the Plaintiff. Mr. Orlov is an economics professor at Radford University in Radford, Virginia. He has been married to a United States citizen since September 2001, has been steadily employed and always maintained lawful immigration status, has always paid his taxes, has never engaged in any illicit or criminal activities, and has never associated with any subversive groups or individuals. *See* Complaint ¶10. Furthermore, during the more-than four years that his adjustment of status application has remained pending, the Plaintiff has been granted permission to work, permission to travel, and permission to reside in the United States by U.S. immigration authorities. Were the Plaintiff truly perceived to be a "risk to the safety and security of the nation," surely the proper course would not be to simply indefinitely delay his adjustment of status application while consistently affording him the right to live, work, and travel in this country.

The unreasonable delay in this case cannot fairly be attributed to anything other than impermissible bureaucratic inaction. Remarkably, notwithstanding the four year delay in adjudication, the Defendants have revealed that no request to expedite the FBI name check process has been requested in this case, because "[e]xpedite requests require

additional fees to be paid to the FBI by USCIS and USCIS is limited by the FBI as to the number of requests that can be made." Dibbins Decl. ¶8. Under these circumstances, the agency has failed to demonstrate a good faith effort to resolve administrative errors and adjudicate the Plaintiff's application within a reasonable timeframe, which clearly weighs in favor of mandamus relief. *Cf. Liberty Fund v. Chao*, 394 F. Supp. 2d 105, 120 (D.D.C. 2005) (holding that "the good faith of the agency in addressing the delay weighs against mandamus").

Accordingly, the Plaintiff urges this Court to find, notwithstanding the Defendants' protestations, that the facts of this case clearly support his claim of unreasonable agency delay. The Court should order the Defendants and those acting under them to perform their non-discretionary legal duty and adjudicate the Plaintiff's meritorious adjustment of status application without further delay.

**VII.    CONCLUSION**

Based on the foregoing, the Plaintiff respectfully opposes the Defendant's motion to dismiss and urges the Court to deny the motion in its entirety. Furthermore, the Plaintiff urges the Court to remand the Plaintiff's application for adjustment of status to CIS, with instructions that all appropriate steps must be taken to adjudicate the Plaintiff's application within 30 days, including expediting the Plaintiff's background checks with the FBI. *See Song*, 2007 WL 1101283, at *5 (denying government motion to dismiss and remanding to CIS "to complete adjudication of plaintiffs applications within thirty days"); *Haidari*, 2006 WL 3544922, at *6 (denying motion to dismiss and remanding to CIS to complete processing of plaintiffs adjustment applications within 30 days).

Respectfully submitted,

ALEXEI ORLOV

*By counsel,*

_____
Michael Maggio
DC Bar Number: 254094


_____
Thomas K. Ragland
DC Bar Number: 501021

MAGGIO & KATTAR
11 Dupont Circle, NW, Suite 775
Washington, DC 20036
Phone:  (202) 483-0053
Fax:  (202) 483-6801
tragland@maggio-kattar.com

*Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I, Thomas K. Ragland, do hereby certify that on this 15th day of June 2007, a true and correct copy of the foregoing Opposition to Defendants' Motion to Dismiss was filed electronically and thereby served upon:

> Heather Graham-Oliver
> Assistant United States Attorney
> Civil Division
> 555 4th Street, N.W.
> Washington, D.C. 20530
> 202-305-1334

_____/s /_____

Thomas K. Ragland
MAGGIO & KATTAR
11 Dupont Circle, NW
Suite 775
Washington, DC 20036

Phone: 202-483-0053
Fax:    202-483-6801

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————————————————————
                        )

**ALEXEI ORLOV,**               )

                        )

      **Plaintiff**            )

                        )

**v.**                       )

                        )

**PHYLLIS HOWARD, District Director,**  )     **Civ. No.  07-0350 (JDB)**
**U.S. Citizenship and Immigration Services, et al.,)**

                        )

      **Defendants**         )

———————————————————————)

## <u>ORDER</u>

ORDERED that Defendants' motion to dismiss is hereby DENIED.


DONE AND ORDERED this _____day of June 2007,


_____
John D. Bates
United States District Judge
United States District Court for the District of
Columbia