# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ALEXEI ORLOV,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) **Civil Action No. 07-0350 (JDB)** |
| **PHYLLIS A. HOWARD, et al.** | ) |
| **U.S. Citizenship and Immigration Services** | ) |
| | ) |
| **Defendants.** | ) |

## DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION

Defendants, Phyllis A. Howard, et al., by and through counsel, hereby replies to Plaintiff's Opposition to their Motion to Dismiss.[1] The plain language of 8 U.S.C. § 1252(a)(2)(B)(ii) of the Immigration and Nationality Act (INA) strips federal courts of subject matter jurisdiction. Specifically, it divests courts of jurisdiction to review "an agency's discretionary decision or action." Id. While some federal courts require that Congress explicitly specify which actions are discretionary, Plaintiff overstates this authority's weight. Importantly, in this jurisdiction, it is not required that statutory language include the word "discretion" for all actions of the Attorney General to be considered discretionary. See Zhu v. Gonzales, 411 F.3d 292, 294-95 (D.C. Cir. 2005); Mahaveer v. Bushey, et al., No. 04-1275, 2006 U.S. Dist. LEXIS 40005 *8, (D.D.C. June 19, 2006). In the present case, the Attorney General clearly has discretion to adjust immigrant status and, as a consequence, exercises general discretion when processing those applications. Thus, the pace of the application process must be considered a

---

[1] The Defendants will hereinafter be referred to as U.S. Citizenship and Immigration Services (USCIS).

discretionary action over which the District Court lacks subject matter jurisdiction.

## **DISCUSSION**

The plain language of 8 U.S.C. § 1252(a)(2)(B)(ii) (2006) strips subject matter jurisdiction over complaints regarding discretionary actions of the Attorney General.  USCIS moved to dismiss Plaintiff's case, arguing among other reasons, that § 1252(a)(2)(B)(ii) removes the District Court's jurisdiction over Plaintiff's unreasonable pace claim because the pace of reviewing an immigration application is discretionary.  Defendants' Motion to Dismiss (MTD) at 13.  Plaintiff responds that "the overwhelming 'weight of authority' on this issue … clearly holds that USCIS has 'a non-discretionary duty to process or adjudicate an adjustment application' and that 'that duty supports a mandamus action.'"  Plaintiff's Response to Motion to Dismiss (RMTD) at 8 (internal citations omitted).

Plaintiff overstates the weight of authority supporting his interpretation of § 1252(a)(2)(B)(ii).  Courts that do find subject matter jurisdiction over pace of adjustment claims interpret §1252(a)(2)(B)(ii) on its face and reason that public policy favors the government's security and efficiency interests.  See e.g. Safadi v. Howard, 466 F. Supp. 2d 696 (E.D.Va. 2006) (holding the plain language § 1252(a)(2)(B)(ii) strips jurisdiction over the pace of adjustment because the review process is an action involving discretionary choices and the statute's plain language bars suits over such actions).  In contrast, other courts have ignored the plain language of the statute and found subject matter jurisdiction holding that Congress must explicitly specify which discretionary actions are not reviewable.  See e.g. Duan v. Zamberry, No. 06-1351, 2007 WL 626116 (W.D.Pa. February 23, 2007) (holding § 1252(a)(2)(B)(ii) strips jurisdiction only when Congress explicitly specifies that an action is discretionary and the pace

of adjustment is not specified as discretionary).  Courts in this circuit however are taking a plain

language approach to the statute and holding that discretionary action need not be statutorily

specified.  See Zhu v. Gonzales, 411 F.3d 292, 294-95 (D.C. Cir. 2005).

I.    **Section 1252(a)(2)(B)(ii) Should Be Interpreted According To Its Plain Meaning.**

On its face, the statute directs that "no court shall have jurisdiction to review … any other

decision or action of the Attorney General or the Secretary of Homeland Security the authority

for which is specified under [subchapter II of Chapter 12 of Title 8, which covers §§ 1151-1379]

to be in the discretion of the Attorney General or the Secretary of Homeland Security …."  8

U.S.C. § 1252(a)(2)(B).

Section 1255(a) provides in pertinent part that "the status of an alien … may be adjusted

by the Attorney General, in his discretion and under such regulations as he may prescribe."  See

8 U.S.C. § 1255(a).  Section 1255(a) falls within subchapter II of Chapter 12 of Title 8.

Accordingly, the ultimate decision to grant or deny an adjustment of status application is clearly

discretionary.  In spite of this clear grant of discretion, plaintiff argues that there is no discretion

over the pace of the process of the adjustment application.  Courts, for good reason, have held

otherwise.

In Safadi v. Howard, the United States District Court for the Eastern District of Virginia

held that the entire process of immigration application review is a series of discretionary acts and

such discretionary action, including the pace of action, is unreviewable in federal court because

of § 1252(a)(2)(B)(ii).  466 F. Supp. 2d 696 (E.D.Va. 2006).  The Safadi Court reasoned that

"under § 1252(a)(2)(B)(ii) the term 'action' encompasses *any* act or series of acts that are

discretionary within the adjustment of status process." 466 F.Supp.2d at 699 (emphasis in

original).  Without "any limits on USCIS's discretionary authority over the adjustment of status process, it is clear that 'action' in § 1252(a)(2)(B)(ii) encompasses the entire process of reviewing an adjustment application, including the completion of background and security checks and the pace at which the process proceeds."  Id.

The Safadi Court further reasoned that the pace of adjustment is discretionary because a federal court should presume to not have jurisdiction unless an action is specified as non-discretionary.  Id. ("Surely Congress, in passing § 1252(a)(2)(B)(ii), did not intend to preclude from judicial review all discretionary actions involved in the processing of an adjustment application except for the pace of such processing.  Indeed, to suggest that the Congress intended to except the pace of the process from the general exclusion of judicial review is belied by the complete absence of any statutory time limits on the processing of adjustment applications.")  The Safadi Court also emphasized that despite the obvious hardship on immigrants, public policy "in this post-9/11 world" commands this outcome because "[o]ur national security requires that caution and thoroughness in these matters not be sacrificed for the purpose of expediency."  Id. at 701.

Dmitrenko v. Chertoff, No. 1:07cv82, 2007 WL 1303009 (E.D.Va. Apr. 30, 2007), followed Safadi's logic again holding that the entire immigration adjustment process is discretionary and federal courts have no jurisdiction to review the pace of adjustment claims.  The Dmitrenko Court emphasized "it is clear from the text [of the statute] that federal courts are not to interfere with the discretion of agencies" in the decisions and processes by which they decide status adjustments.  Id. at *1.  The Dmitrenko Court reiterated Safadi's public policy concern with protecting security and efficiency and added that finding jurisdiction over pace of

adjustment cases "would set a dangerous precedent, sending a clear signal that more litigious applicants are more likely to be moved to the top of the proverbial pile over other applicants that have waited even longer.  [This] hardly optimizes resources, and serves only the individual at the detriment to the group."  Id.

Similarly, the United States District Court for the Western District of Virginia also held in Zhang v. Chertoff that § 1252(a)(2)(B)(ii) strips federal courts of jurisdiction over pace of adjustment claims.  No. 3:06cv00066, 2007 WL 1753538 (W.D.Va. June 19, 2007).  Like the Safadi and Dmitrenko Courts, the Zhang Court reasoned that the plain language of the statute conveyed Congress' intent to make all processes, which are a series of actions, discretionary unless specified as non-discretionary through statutory time limits.  Id. at *3.  As the Zhang Court reasoned, "[i]f Congress had intended for the pace of adjudication of adjustment applications to be subject to judicial review, it could have expressly offered a standard with which to measure the lapse of time."  Id.  Again, courts have no jurisdiction by default, but rather gain jurisdiction when Congress specifically grants it.

Further, ample authority exists throughout the United States to support the proposition that § 1252(a)(2)(B)(ii) strips jurisdiction for pace of adjustment claims.  See Grinberg v. Swacina, 478 F. Supp. 2d 1350, 1352 (S.D. Fla. 2007)( if Congress intended to confer jurisdiction on a federal court to review the pace of adjudication for adjustment of status applications, it would have expressly provided for a time limitation in § 1255(a), as it did in 8 U.S.C. § 1447(b).  That Congress did not do so here reflects its intent to leave the pace of adjudication discretionary with the United States Attorney General and outside the scope of judicial review.  While this Court acknowledges Plaintiff's frustration from waiting indefinitely

in immigration limbo for a determination, it finds Congress rather than a federal court, is the proper governmental body to fashion a remedy.); see also Rogath v. Chertoff, No. CA 06-541, 2007 WL 1160358 (D.R.I. April 17, 2007); Li v. Gonzales, No. No. 06-5911, 2007 WL 1303000 (D.N.J. May 3, 2007); Hu v. Chertoff, No. CIV. S-06-2805, 2007 WL 1515067 (E.D. Cal. May 22, 2007); Alkenani v. Barrows, 356 F. Supp. 2d 652 (N.D. Tex. 2005); and Maldonado-Coronel v. McElroy, 943 F. Supp. 376 (S.D.N.Y. 1996). While there are some courts that disagree with this reasoning, e.g., Duan v. Zamberry, No. 06-1351, 2007 WL 626116 (W.D.Pa. Feb. 23, 2007); Song v. Klapakas, No. 06-05589, 2007 WL 1101283 (E.D.Pa. Apr. 12, 2007); and Ma v. Gonzales, No. CO7-122, 2007 WL 1655188 (W.D. Wash. June 5, 2007) (hereinafter Ma & Liu), the courts in this Circuit are not among them.

## II.    The District of Columbia Circuit Does Not Require that Congress Explicitly Specify An Action as Discretionary to be Statutorily Protected.

In Zhu v. Gonzales, the United States Court of Appeals for the District of Columbia read § 1252(a)(2)(B)(ii) narrowly on its face to hold that a decision under the Attorney General's discretion need not be explicitly specified as under his or her discretion in order to be excluded from federal jurisdiction by the statute. 411 F.3d 292, 293-94 (D.C. Cir. 2005). Zhu involved four citizens of the People's Republic of China, working as medical researchers in the United States. The Zhu plaintiffs appealed from an order of the district court dismissing their complaint, in which they sought review of the Attorney General's refusal to waive the requirement that they obtain a "labor certification" in order to petition for a work visa. Id., at 293. Pursuant to 8 U.S.C. § 1153(b)(2)(B)(i), "the Attorney General may when he deems it to be in the national interest, waive the requirements [of obtaining a labor certification] . . ." The

6

plaintiffs argued that the exercise of the authority granted was not specified to be in the discretion of the Attorney General.

In rejecting that notion, the <u>Zhu</u> Court analyzed the Congressional intent behind the last clause of § 1252(a)(2)(B)(ii), which creates an exception to allow judicial review of decisions or actions under 8 U.S.C. § 1158(a):

> "Discretion" nowhere appears in § 1158(a).  The exception therefore establishes that a decision may be "specified … to be in the discretion of the Attorney General" even if the grant of authority to make that decision does not use the word "discretion" … <u>Because we must "give effect, if possible to every clause and word of a statute," … and because we think it unlikely the Congress intended that, regardless of context, no grant of authority to the Attorney General be deemed discretionary unless it uses the word "discretion," … we reject the plaintiff's rendition of the statute.</u>

411 F.3d at 295 - 96 (emphasis added and internal citations omitted).  Thus, the <u>Zhu</u> plaintiffs could not rest on claiming that the waiver statute at issue did not include the word "discretion," but rather had to proffer an argument that the waiver decision was non-discretionary.  <u>Id.</u>  In <u>Zhu</u>, the Court found no provision at issue that "suggests the Congress intended that the Attorney General be constrained when deciding whether a waiver should be granted."  <u>Id.</u> at 296.  Most importantly, the <u>Zhu</u> Court's starting point was not that courts are presumed to have jurisdiction unless specifically constrained, but rather that the government is presumed to have discretion unless specifically constrained.  <u>Id.</u>

It is clear enough that the <u>Zhu</u> decision signaled that federal courts in the District of Columbia should approach § 1252(a)(2)(B)(ii) with finding no jurisdiction as their starting point and allow jurisdiction only when the plaintiff can forward statutory specification that a decision is non-discretionary.  Accordingly, a  federal court in the District of Columbia applying the reasoning of <u>Zhu</u> should find that § 1252(a)(2)(B)(ii) strips it of jurisdiction over pace of

adjustment claims.

Plaintiff argues that while the ultimate decision to adjust an immigrant's status is clearly specified as discretionary, the process of adjustment is non-discretionary absent some explicit specification as discretionary. Plf's Opp. at 8. At the core of Plaintiff's reasoning – drawn from Duan, Song, and Ma & Liu – is the charge that "the absence of language cannot mean the presence of discretion." Duan, No. 06-1351, 2007 WL 626116, at note 2 (quoting Gemini Realty, Inc., No. 06-786-Orl-19 DAB, 2006 U.S. Dist. LEXIS 74194, at *12 (M.D. Fla, Oct. 11, 2006)). Plaintiff further argues that public policy commands the Court to find jurisdiction, because "[w]ere this Court to hold otherwise, it would surrender its vital judicial oversight role and deprive countless deserving adjustment of status applicants – like the Plaintiff – of their sole avenue of recourse." Plf's Opp. at 8.

However, Plaintiff misunderstands § 1252(a)(2)(B)(ii) in the context of the Zhu ruling. Zhu holds the exact opposite of Plaintiff's proffered authority requiring actions to be explicitly specified as discretionary to be protected by § 1252(a)(2)(B)(ii). Just as the government's denial of a waiver in Zhu was presumed discretionary unless specified otherwise because it was a part of a generally discretionary decision making process, the government's delay in the adjustment of Mr. Orlov's claims should also be seen as discretionary unless explicitly specified as non-discretionary.

Plaintiff's distinction between the process of adjustment and the ultimate decision to adjust must fail. That is so because it requires interpreting § 1252(a)(2)(B)(ii) as a weak limit on jurisdiction that requires extra discretionary language to overcome review of generally discretionary actions. See e.g. Duan, No. 06-1351, 2007 WL 626116. Instead, in this circuit, §

8

1252(a)(2)(B)(ii) powerfully withdraws jurisdiction and requires extra non-discretionary language to *be overcome*. See generally Zhu, 411 F.3d 292. While Duan's quoted claim that "the absence of language cannot mean the presence of discretion" sounds eloquent and applies in the Third Circuit, the rule in the D.C. Circuit under Zhu may be more appropriately stated as "the absence of language cannot mean the presence of non-discretion." See generally Zhu, 411 F.3d 292; for Duan quote see No. 06-1351, 2007 WL 626116, at note 2 (quoting Gemini Realty, Inc., 6:06-cv-786-Orl-19, 2006 U.S. Dist. LEXIS 74194, at *12)).

Furthermore, Plaintiff's policy concern that the District Court should not "surrender its vital judicial oversight role and deprive countless deserving adjustment of status applicants – like the Plaintiff – of their sole avenue of recourse" overlooks the government's policy concerns and misunderstands § 1252(a)(2)(B)(ii). Plf's Opp. at 18. Defendant does not ask the District Court to "surrender" its jurisdiction, but to recognize that Congress has addressed this issue in order to preserve its public policy interests in national security and efficiency.

Plaintiff may argue that Zhu does not bar his claim in the D.C. Circuit because it ruled only on the discretion required to make a decision, not an action, immune under § 1252(a)(2)(B)(ii). Plaintiff would be mistaken in this challenge.

First, while Zhu dismissed the need for extra specification for a decision to fit under § 1252(a)(2)(B)(ii), nothing in its reasoning suggests its logic is limited to only decisions and not actions. Zhu, 411 F.3d at 294-95. Indeed, the final clause of § 1252(a)(2)(B)(ii), which the Zhu Court relies upon to show Congress' intent to grant discretion even where the word "discretion" is absent, applies equally, in the plain language of the statute, to decisions and actions. See id.; see also § 1252(a)(2)(B)(ii) ("[A]ny other decision *or* action … other than the granting of relief

under section 1158(a) in this article.") (emphasis added).

Second, though <u>Zhu</u> did not pick a standard for what degree of discretion was required to make a decision discretionary under § 1252(a)(2)(B)(ii), it is clear that it implicitly rejected the reasoning of cases like <u>Duan</u>, <u>Song</u>, and <u>Ma & Liu</u>. In contrast to these cases, which Plaintiff proffers as authority for finding jurisdiction over his claim, <u>Zhu</u> places the burden on the Plaintiff to show non-discretion, rather than on the Defendant to show discretion.

Third and finally, the Court need not distinguish the reasoning in <u>Zhu</u> to be inapplicable to the present case. Although, Plaintiff claims that the pace of adjustment is naturally non-discretionary and does not make the <u>Zhu</u> mistake of simply claiming the words "the pace of adjustment is discretionary" are not written in the U.S. Code; he nevertheless, relies on decisions – like <u>Duan</u>, <u>Song</u>, and <u>Ma & Liu</u> – which essentially require such magic language to be present to make the pace of adjustments discretionary under  § 1252(a)(2)(B)(ii).

Finally, Plaintiff states that there factual errors in the Defendants MTD. However, the facts that Plaintiff disagrees with are not material to the Court's decision in this case. They are at best collateral. On May 15, 2007, Ms. Susan Dibbins signed her initial declaration. Her statements were based upon reasonable inquiry and her knowledge, information and belief of Mr. Orlov's file. Supplemental Declaration of Susan P. Dibbons, ¶ 1. Several documents from the applicant's alien file were reviewed and contributed to the basis of her knowledge, information and belief for the May 15, 2007 declaration. <u>Id.</u> Those documents included the Notice of Interview from 2005; the document request that was made to the applicant; the applicant's pending I-485 application; and the applicant's hand written request for a change of interview location, stamp dated July 24, 2004, by USCIS. <u>Id.</u> These documents are attached to Ms.

Dibbons' supplemental declaration.[2]  In addition, a new fingerprint appointment was issued on

June 28, 2007, setting an appointment for August 14, 2007.  Id., at ¶ 2.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss this

case for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and/or for failure to state a

claim pursuant to Rule 12(b)(6).

Respectfully submitted,


_____

JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney


_____

RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney


_____

HEATHER GRAHAM-OLIVER
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
202-305-1334

---

[2]  The applicant's I-485 application has not been submitted due to the sheer amount of personal information contained therein, such as residence address, date of birth and social security numbers, names of family members and etc.  In addition, Mr. Orlov's hand written request for a change of location of the interview is eligible in PDF format and will be supplemented on the record when a legible copy is provided.  These are the documents upon which Ms. Dibbons relied upon to form the basis for the procedural statements contained in the declaration.

11

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Alexi Orlov,                              )
         Petitioner,                 )
                              )
                              )
     v.                                     )    Civ. Act. No. 07-0350 (JDB)
                              )
Michael Chertoff,                         )
Secretary of the Department of            )
U.S. Homeland Security, *et al.*,         )
         Defendants.                 )
                              )
                              )

## SUPPLEMENTAL DECLARATION OF SUSAN P. DIBBINS

Pursuant to 28 U.S.C. § 1746, Susan P. Dibbins declares under penalty of perjury as follows:

I, Susan P. Dibbins, hereby declare:

I am the Field Office Director of the Washington District Office, located in Fairfax, Virginia, of the United States Citizenship and Immigration Services (USCIS) in the Department of Homeland Security (DHS). I oversee the adjudication of applications for immigration benefits, including applications for adjustment of status. I held the position of Assistant District Director from September 2004 until April 1, 2007, when I was promoted to the position of Field Office Director. In those capacities, and based upon reasonable inquiry and my knowledge, information and belief, I state the following:

(1)     On May 15, 2007, I signed my initial declaration related to this case. My statements of May 15, 2007, were based upon 'reasonable inquiry and my knowledge, information and belief' of Mr. Orlov's file and that is still the case. Several documents from the applicant's A-file (alien file) were reviewed and contributed to the basis of my knowledge, information and belief for the May 15, 2007 declaration. Those documents

1

include the Notice of Interview from 2005; the document request that was made to the applicant; the applicant's pending I-485 application, and the applicant's request for a change of interview location.

(2)    Based upon information from his counsel the applicant will be outside the United States until August 11, 2007, and therefore a fingerprint appointment was issued on June 28, 2007 setting an appointment for August 14, 2007.

(3)    As of July 18, 2007, the name check that was initiated on May 5, 2003, is still pending with the FBI.

(4)    Upon receipt and analysis of the results of the pending security checks, USCIS will continue to review Mr. Orlov's adjustment application and complete its adjudication as expeditiously as possible under the circumstances.

I declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge and belief.  Executed on this Eighteenth day of July, 2007.

Susan P. Dibbins
Field Office Director
Fairfax, Virginia Office
U.S. Citizenship and Immigration Services
U.S. Department of Homeland Security

**U.S. Department of Homeland Security**
United States Citizenship and Immigration Services

*2675 Prosperity Ave.*
*Fairfax, VA  22031*

File Number: A72201860
Date: July 13, 2005

Alexei G.  ORLOV
415 SILVER LEAF DRIVE
CHRISTIANSBURG, VA  24073

Please come to the office shown below at the time and place indicated in connection with an official matter.
---                                                                                                    ---
OFFICE LOCATION:

DATE AND TIME:            07/28/05
                          08:45 AM

OFFICER:                  A
                          District Adjudications Officer

REASON FOR APPOINTMENT:   Application for Adjustment of Status Interview

**THIS INTERVIEW WILL BE VIDEOTAPED.**
<u>PLEASE BRING ALL ITEMS THAT ARE CHECKED (X) TO THE INTERVIEW.</u>

X      THIS LETTER, YOUR PASSPORT, AND YOUR I-94 (ARRIVAL/DEPARTURE FORM), IF ANY.

X      MEDICAL EXAM RESULTS, FORM I-693. APPEAR EVEN IF NOT COMPLETED.

X      FEDERAL INCOME TAX RETURNS FOR THE PREVIOUS THREE YEARS WITH W-2'S.

X      A CURRENT LETTER OF EMPLOYMENT FOR YOU AND/OR YOUR SPOUSE SHOWING RATE OF
       PAY AND HOURS PER WEEK.

X      CERTIFIED COPY OF THE COURT DISPOSITIONS OF ALL ARRESTS, IF APPLICABLE.

       YOUR SPOUSE AND EVIDENCE OF A COMMON RESIDENCE AND SHARED LIFE (INCLUDE
       PHOTOS).

X      Petitioner must submit  federal income taxes from 2002, W-2 forms from previous 3 years and a letter
verifying current employment.  Beneficiary must submit birth certificate and form I-693 with supplement..  See
attached list.

**YOU MUST BRING THE ORIGINAL AND ONE CLEAR COPY OF ALL DOCUMENTS SUBMITTING FOR EXAMINATION!
THE OFFICER <u>WILL NOT</u> COPY ANY DOCUMENTS!**

Cc:

U.S. Department of Homeland Security
2675 Prosperity Avenue
Fairfax, VA 22031



U.S. Citizenship
and Immigration
Services

**Interviewing Officer:**

NAME AND ADDRESS OF APPLICANT/PETITIONER
**Alexei G. Orlov**

**415 Silver Leaf Dr.**

**Christiansburg VA 24073**

NAME OF BENEFICIARY

DATE
**July 21, 2005**
FILE NO.
**A 72 201 860**
FORM NO.
**I-485**

PLEASE COMPLY WITH THE BELOW CHECKED ☒ INSTRUCTIONS.

☐   1. Furnish the applicant's form G-325A, Biographical Information.

☐   2. Furnish two (2) color photographs. These photos must have a white background, must be glossy, un-retouched, and not mounted. Dimension of the facial image should be about one (1) inch from chin to top of hair or head, shown in a full frontal face position. Using soft pencil or felt pen, print alien registration receipt number (if known) and name on back of each photograph. All photos must be identical and no more than 30 days old when an application/petition is filed.

☐   3. Furnish the birth certificate of _____. A foreign document must be accompanied by a translation in English. The translator must certify that he/she is competent to translate and that the translation is accurate.

☐   4. Furnish evidence of lawful entry into the United States.

☐   5. Furnish the date and port of each of your entries into the United States, and the name of the ship, plane (including flight number), or other vehicle on which you traveled.

☐   6. Furnish form I-864, Affidavit of Support for your ☐ sponsor/ ☐ cosponsor. Include current letters of employment from all their current employers on the company letterhead to include: dates of employment, the nature of the job, wages or salary earned, number of hours/weeks worked, and prospects for future employment and advancement. It is this current employment income that should be used to determine whether a sponsor meets the income requirements for Form I-864. Also include tax returns and W-2's for the following years: ☐ 2004, ☐ 2002, ☐2001.

☐   7. Furnish current letters of employment from all current employers of your ☐ sponsor/ ☐ cosponsor on the company letterhead to include: dates of employment, the nature of the job, wages or salary earned, number of hours/weeks worked, and prospects for future employment and advancement. It is this current employment income that should be used to determine whether a sponsor meets the income requirements for Form I-864.

☒   8. Furnish tax returns and W-2's for the following years: ☒ 2004, ☒ 2002, ☐2001.

☐   9. Furnish form I-693, Medical Examination along with the supplemental immunization worksheet.

☐   10. Furnish an ☐ I-212, Application for Permission to Reapply for Admission into the United States After Deportation or Removal/ ☐ I-601, Application for Waiver of Ground of Excludability to include supporting documentation.

☐   11 Furnish your I-797 notice of **APPROVAL** containing your priority date in the corresponding box of the form.

☐   12. Furnish the marriage **REGISTER** of _____.

☐   13. Furnish proof of death or legal termination of marriage of _____.

☐   14. A foreign document must be accompanied by a translation in English. The translator must certify that he/she is competent to translate and that the translation is accurate.

☐   15. Your application will remain in a pending status until all security checks pertaining to you have cleared. When this office receives the updated information you will be contacted by mail. There are no means in which to predict the amount of time your security checks will require to clear.

☐   16.

☒   17. You have until 08/20/05 to submit the requested documents or your application will be denied.

☒   18. Please mail all requested documents to: U.S. Department of Homeland Security, Citizenship & Immigration Services, 2675 Prosperity Avenue, Fairfax, VA 22031, in a sealed envelope clearly marked with your Alien number, name and to the attention of "245 CONTINUED CASES".

SINCERELY,

**PHYLLIS A. HOWARD**
DISTRICT DIRECTOR SERVICES

Copy Mailed to Attorney or Representative: Parastoo Zahedi

RFE
(REV 10-13-04)

**PLEASE RETURN THIS LETTER AND ALL ATTACHMENTS WITH
YOUR RESPONSE**



To WHOM IT MAY CONCERN:

I REQUEST THAT MY INTERVIEW FOR PERMANENT
RESIDENTSHIP BE HELD AT THE ARLINGTON FOR
I DO NOT MIND TRAVELING TO AND FROM
CHRISTIANSBURG, VA.

THANK YOU.

SINCERELY,

Alexei G. Green

ALIEN # A 72201860

JUL - 8 2004